### In re FARM & HOME CO.

### LIBERTY BANKING CO. OF FREMONT, OHIO, v. DICK, Trustee.

#### No. 7033.

Circuit Court of Appeals, Sixth Circuit

June 30, 1936.

934

W. J. Mead, of Fremont, Ohio, for appellant.

Thomas B. Stahl, of Fremont, Ohio, for appellee.

Before HICKS, SIMONS and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

A mortgagee of the bankrupt's real estate appeals from an order of the District Court denying a petition to review an order of the referee holding its mortgage void.

The bankrupt was a corporation which operated a retail business in Fremont, Ohio. Its chief asset was real estate valued at about $80,000 consisting of its store, the land upon which it stood, and a railroad siding. The corporation had little working capital, and from its inception borrowed money from appellant.

In May, 1926, the bankrupt owed appellant over $17,000, and it was agreed that bankrupt should execute a non-interest bearing note for $30,000, payable to appellant, secured by a mortgage on its real estate for the same sum, with the understanding, as stated by the bankrupt's manager and expressed in a letter written by appellant's cashier to the bankrupt, that "said mortgage is not to be filed for record at this time but held in escrow for emergency." The note and mortgage were executed on May 15, 1926. The actual loans made thereafter by appellant to the bankrupt were evidenced by short-time notes bearing interest.

The bankrupt had continuous overdrafts on its account with appellant, but usually covered them within a few days by deposits. In the latter part of 1929 the bankrupt had assigned its accounts receivable, and was pressed financially. It attempted early in 1930 to float a $75,000 issue of unsecured "Gold Bonds," and succeeded in selling $20,000 worth of them, $10,000 of which was used to reduce its debt to appellant to about $15,000. Appellant knew of the campaign to sell these bonds. In May, 1930, the bankrupt was particularly slow in covering its overdrafts, which, as one bank official testified, was "an indication we should start to cover up." Accordingly appellant filed the mortgage for record on June 3, 1930, more than four years after its execution, though more than four months prior to bankruptcy.

A receiver in the state court was appointed on December 11, 1930, and the corporation was adjudicated bankrupt on February 10, 1931.

This proceeding was instituted by a petition of the trustee in bankruptcy for authority to sell the bankrupt's real estate free and clear of all liens, averring that appellant claimed an interest in the realty. Appellant filed an answer, setting up its mortgage. The trustee in his reply alleged that the mortgage was a fraudulent transfer made in an attempt to prefer appellant over other creditors, and invalid because it was withheld from record pursuant to express agreement, whereby the bankrupt's credit rating was strengthened. The referee held that appellant's mortgage is an unlawful preference under sections 11104 and 11105, General Code of Ohio,[1] void at common law, and so does not constitute a valid lien on the bankrupt's real estate.

Appellant contends (1) that the trustee cannot maintain this action because only a creditor who has reduced his claim to judgment can maintain such a bill; and (2) that the mortgage is not invalid under the

[1] Section 11104, G. C.:

"A sale, conveyance, transfer, mortgage or assignment * * * by a debtor or debtors * * * with a design to prefer one or more creditors to the exclusion in whole or in part of others, and a sale, conveyance, transfer, mortgage or assignment made * * * with intent to hinder, delay or defraud creditors, shall be void as to creditors of such debtor, or debtors at the suit of any creditor or creditors."

Section 11105, G. C.:

"The provisions of the next preceding section shall not apply unless the person or persons to whom such sale, conveyance, transfer, mortgage or assignment is made, knew of such fraudulent intent on the part of such debtor or debtors, nor shall anything in such section contained vitiate or affect any mortgage made in good faith, to secure any debt or liability created simultaneously with such mortgage, if such mortgage be filed for record in the county wherein the property is situated, or as otherwise provided by law, within three days after its execution, and when, upon foreclosure or taking possession of such property, the mortgagee fully accounts for the proceeds thereof."

Ohio Code because it was given for a present and valuable consideration and not in contemplation of insolvency nor with intent to prefer the bank; that the bankrupt was not insolvent at the time of record of the mortgage; that the bank had no notice of insolvency at that time, and that under Ohio law the withholding of the mortgage from record does not render it invalid.

Section 47 of the Bankruptcy Act as amended in 1910 (title 11 U.S.C.A. § 75) gives to trustees in bankruptcy as to property within the custody of the court the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings. Under the Bankruptcy Act also the trustee may avoid any transfer which a creditor might have avoided (title 11 U.S.C.A. § 110(e), and a transfer includes a mortgage (title 11 U.S.C.A. § 1 (25). The trustee may maintain a suit to set aside a fraudulent transfer although neither he nor any creditor has reduced the claim against the bankrupt to judgment. Collier on Bankruptcy (13th Ed.) 1776, 1777; In re Baumgartner, 55 F.(2d) 1041, 1046 (C.C.A.7); In re Duker Ave. Meat Market (C.C.A.) 2 F.(2d) 699. Here the transfer is alleged to be fraudulent. The action may be brought by the trustee under sections 11104 and 11105, General Code of Ohio, the trustee having the right under the Bankruptcy Act to set aside a transfer in violation of state law, and the four months provision (title 11 U.S.C.A. § 96) does not apply. Stellwagen, Trustee, v. Clum, Trustee, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507. In Irwin v. Maple, 252 F. 10, 13 (C.C.A.6), this court said that "if any creditor of the bankrupt might have avoided the mortgage, the trustee may avoid it and recover the bankrupt's interest in the mortgaged property, or in the proceeds derived from its sale."

The trustee may maintain this action.

The referee rightly held the mortgage invalid as a preference under sections 11104 and 11105, General Code, and also because it was withheld from record under such circumstances as to constitute a fraud on creditors. The mortgage took effect as against creditors from the date when it was filed for record. Section 8542, General Code of Ohio. Hence its character is to be determined as of the day of the filing, that is to say, as of June 3, 1930, instead of May 15, 1926. If recorded under circumstances of actual or constructive fraud, it constitutes a preference. The District Court, by denial of review, in effect approved the finding of the referee that the bankrupt was insolvent in June, 1930, and that appellant had knowledge thereof. This finding will not be set aside on anything less than a demonstration of plain mistake. Atlanta Knitting Mills v. Nathanson Bros. Co., 64 F.(2d) 912 (C.C.A.6); Fruehauf Trailer Co. v. Bridge, Receiver, 84 F.(2d) 660, decided May 15, 1936. Appellant recorded the mortgage in order to "cover up" and secure a preference, and hence the lien is invalid under sections 11104 and 11105, General Code. Irwin v. Maple, supra.

The mortgage was also invalid because of the circumstances under which it was withheld from record. An agreement to keep a mortgage from record, while not of itself rendering the mortgage void, is a matter for consideration in connection with other facts in the determination of the alleged question of fraud. Stewart v. Hopkins, 30 Ohio St. 502.[2] In the case of In re Shirley, 112 F. 301, 305, this court held that "Undoubtedly the withholding from record of the mortgage may be under such circumstances and for so long a time as to taint the security with fraud. * * * There may be such circumstance of knowledge on the part of the mortgagee of the purposes of the mortgagor to deal with others in the apparently unincumbered ownership of the property as would amount to fraud." See, also, Rogers v. Page, 140 F. 596 (C.C.A.6); Rankin v. Cox, 71 F. (2d) 56 (C.C.A.8).

These circumstances exist here. The bankrupt sent numerous letters to creditors and mercantile agencies stating that it possessed $100,000 of real estate "absolutely clear." In its report to Dun & Bradstreet, Inc., the bankrupt listed its indebtedness to appellant, but did not mention the mortgage. Appellant knew that the financial condition of the bankrupt in May, 1930, was precarious. It knew of the "Gold Bonds" campaign conducted early in 1930, and accepted the proceeds thereof. It strengthened confidence in the bankrupt's financial condition, and thereby induced creditors to extend credit to the bankrupt when they would not have done so if the mortgage had been recorded.

The order of the District Court denying the petition to review is affirmed.

[2] Affirmed on other grounds, Libby v. Hopkins, 104 U.S. 303, 26 L.Ed. 769.