In re WRIGHT INDUSTRIES, Inc.
KEARNEY v. NATIONAL BRASS &
COPPER CO., Inc., et al.

No. 65749.

United States District Court
N. D. Ohio, E. D.

Sept. 6, 1950.

The following is the opinion of William B. Woods, Referee in Bankruptcy:

## Pleadings

Graham Kearney, trustee of Wright Industries, Inc., bankrupt, filed his petition to sell personal property of bankrupt and marshal liens, and thereupon an order to show cause was issued upon lien claimants to appear and set up whatever claims they had.

National Brass & Copper Co., Inc., answered by filing its "first response", admitting all the allegations of fact in trustee's petition, which alleged a loan of $50,000 to bankrupt in December of 1946, secured by chattel mortgage. Further answering in its "second response" said respondent asks affirmative relief, claiming a first and best lien on all items of personalty described in the three mortgages, in the amount of $34,100, with interest, and that said chattels be sold and the proceeds first applied to its lien.

The Firestone Bank, Lisbon, Ohio, answered, stated it loaned $15,000 to bankrupt on September 6, 1946, taking its note for said amount, secured by chattel mortgage of bankrupt to G. L. Hephner as trustee for said bank, and recited that said Hephner, as such trustee, took chattels of bankrupt into his possession pursuant to another contract of the same date, claiming a first lien thereby in the amount of $8,259.41 with interest, and asking that in the event of sale free of said mortgage such lien be transferred to the fund.

The trustee in bankruptcy filed replies to said answers, denying the validity of any of the chattel mortgages to effect liens against the trustee, i.e. the three mortgages to the National Brass & Copper Co., Inc. and the one to Hephner, trustee for the Firestone Bank, are invalid, and that the attempt of Hephner, trustee, to seize and hold chattels of bankrupt, i.e. several hundred electric fans, was void and of no effect, and asks that Hephner be ordered to surrender said fans to the bankrupt estate.

## Memorandum

The questions presented here involve the applicability and interpretation of Federal and State statutes, so that the language of the statutes become important.

### Statutes in Federal Bankruptcy Act and Ohio State Law.

Bankruptcy Act, § 67, sub. d, 11 U.S.C.A. § 107, sub. d reads as follows:

"(2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition in bankruptcy * * * is fraudulent * * *.

"(d) as to then existing and future creditors, if made or incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either existing or future creditors. * * *

"(5) For the purposes of this subdivision d, a transfer shall be deemed to have been made at the time when it becomes so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, but, if such transfer is not so perfected prior to the filing of a petition in bankruptcy * * *, it shall be deemed to have been made immediately before the filing of such petition."

Bankruptcy Act, § 70, sub. e, 11 U.S.C.A. § 110, sub. e.

"(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor.

"(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate. The trustee shall reclaim and recover such property or collect its

value from and avoid such transfer or obligation against whomever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision e is valid under applicable Federal or State laws."

Ohio General Code, § 8618. "Every gift, grant, or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment or execution, made or obtained with intent to defraud creditors of their just and lawful debts or damages * * * shall be utterly void and of no effect."

Ohio General Code, § 11104. "A sale, conveyance, transfer, mortgage or assignment, made in trust or otherwise, by a debtor * * * in contemplation of insolvency and with a design to prefer one or more creditors to the exclusion in whole or in part of others, and a sale, conveyance, transfer, mortgage or assignment made, or judgment procured * * * in any manner, with intent to hinder, delay or defraud creditors, shall be void as to creditors of such debtor, or debtors at the suit of any creditor or creditors. * * *"

Ohio General Code, § 11105. "The provisions of the next preceding section shall not apply unless the person or persons to whom such sale, conveyance, transfer, mortgage or assignment is made, knew of such fraudulent intent on the part of such debtor or debtors, nor shall anything in such section contained vitiate or affect any mortgage made in good faith, to secure any debt or liability created simultaneously with such mortgage * * *."

Ohio General Code, § 8560. "A mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor * * * unless the mortgage, or a true copy thereof, be forthwith deposited as directed in the next succeeding section."

## Two Mortgages to Hephner, Trustee for National Bronze and Copper Company, Inc.

The mortgage of bankrupt to Hephner, trustee, of December 2, 1946, filed February 18, 1947, described the property sought to be covered thereby as follows: "All of the inventory consisting of supplies, raw materials, products in work or completed owned by Wright Industries, Inc., all machinery and equipment owned by Wright Industries, Inc., all replacements thereof and additions thereto hereafter delivered by said Wright Industries, Inc. to said Trustee and thereby subjected to the lien hereof as fully and completely as if originally listed herein."

The mortgage failed to recite the place of business of either the mortgagor or mortgagee, or the place where the mortgaged property was located.

This mortgage was cancelled when Wright Industries, Inc. executed and delivered to Hephner, trustee, the chattel mortgage dated December 2, 1947 (filed for record December 9, 1947, Ex. B), said substituted mortgage described the property sought to be covered exactly like the mortgage dated December 2, 1946 and also failed to recite the place of either the mortgagor or mortgagee, or the place where the mortgaged property was located.

The evidence is undisputed that Hephner as trustee did not take possession of said goods, did not tag it in any manner, did not segregate it from the other goods of Wright Industries, Inc. but Wright Industries, Inc. was permitted to use and sell the goods for its own account. New inventory was purchased by Wright Industries, Inc. but Hephner as trustee did not take possession of this new inventory nor was it delivered to Hephner as trustee. The Corporation used and sold this new inventory as its own, without any regard to Hephner, trustee of National. In fact as it changed and added to its products, the nature of its inventory changed. From its sales it is obvious that the inventory changed over many, many times. Outside of a few items, no one could tell how much or what items it had on hand June 12, 1948 that was sup-

posedly covered by the mortgage dated June 2, 1946 or December 1947.

The trustee in bankruptcy relies upon Section 70, sub. c for the basis of his claim that the two successive chattel mortgages to Hephner, trustee, are void. Hereafter the applicability of the same statutes to the National mortgage of June 12, 1948 will be considered: A discussion of the applicable rule is found in 7 O.J. page 346.

Section 70, sub. c reads as follows: "* * * The trustee, as to all property in the possession or under the control of the bankrupt at the date of bankruptcy or otherwise coming into the possession of the bankruptcy court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists * * *."

■ The trustee in bankruptcy may rely upon Section 70, sub. c for the nature and basis of his claim to the chattels sought to be covered by the Hephner mortgages. Section 70, sub. c heretofore quoted confers upon the trustee "by force of law" the status of the ideal or "perfect" creditor, irreproachable and without notice armed with every right and power which is conferred by the law of the State upon its most favored creditor. Such hypothetical status depends for meaning upon the substantive law which it does not explicitly indicate, but which it incorporates by reference. Hence the trustee's powers in every case governed by this portion of Sec. 70, sub. c, are those which the State law would allow to a supposed creditor of the bankrupt, who had at the date of bankruptcy completed the process for the perfection of a lien upon property in the bankrupt's or the Court's possession. Whether a trustee is entitled to such a status, and the conditions under which he may attain it, are federal questions covered by the Bankruptcy Act, but the extent of the trustee's rights, remedies and powers as a lien creditor, are measured by the substantive law of the jurisdiction governing the property in question—that is, in this case the law of the State of Ohio. The foregoing follows a discussion of this subject in Collier on

Bankruptcy, 14th Ed., Vol. 4, p. 1261 et seq. See also Remington on Bankruptcy, Vol. 4, Chap. XXX-A, Secs. 1599–1601.

Since the amendment by the Chandler Act of 1938, this section, which was formerly in Sec. 47, sub. a(2), is now recast as a part of Sec. 70, sub. c of the Bankruptcy Act, and is sometimes called the "strong arm clause in Sec. 70c". This right of the trustee in the Bankruptcy Act, as so amended, is discussed in Commercial Credit Company, Inc. v. Davidson, 5 Cir., 1940, 112 F.2d 54, 42 Am.Bankr.Rep., N.S., 688; Janney v. Bell, 4 Cir., 1940, 111 F.2d 103, 42 Am.Bankr.Rep., N.S., 360; Robbins v. Bostian, 8 Cir., 1943, 135 F.2d 298, 53 Am.Bankr.Rep., N.S., 20.

■ Section 70, sub. c specifies that the trustee's lien is deemed vested as of the date when the petition in bankruptcy is filed with respect to all property within the scope of its terms. So, generally speaking, liens properly perfected prior to the date of bankruptcy will be superior to that of the trustee under Sec. 70, sub. c; those not so perfected or perfected subsequently to bankruptcy will be subordinated thereto, and as Collier adds, it must constantly be borne in mind that this is a matter upon which Section 70, sub. c normally defers to the State law, supra, p. 1270.

■ Improper or defective recordation is just as ineffective as no recordation at all from the standpoint of constructive notice to third parties.

In Ohio where a chattel mortgage failed to recite the residence or place of business of either the mortgagor or the mortgagee, such was held invalid against the mortgagor's trustee in Osborn v. Wells, 6 Cir., 69 F.2d 970, when this Referee was affirmed by District Judge West and the Court of Appeals, showing the view the Federal Courts took of failure to comply with Ohio recording statutes.

Syl. 1. "General rule that a chattel mortgage to be valid against creditors must describe the mortgaged property with sufficient definiteness to enable third parties to identify property subject to mortgage lien, is in force in Ohio.

"2. Chattel mortgage which failed to recite residence or place of business of either mortgagor or mortgagee, or place where mortgaged property was located, held void as against mortgagor's trustee in bankruptcy, though name of mortgagor contained the name of a city."

█ The evidence offered fails to show that the chattels seized by Hephner were the same chattels upon which the mortgage had been given. What Hephner, trustee, did was to seize certain chattels and think that he was taking possession under his mortgage. Of course they were not the chattels previously mortgaged as the same had disappeared or been consumed and the lien so asserted by Hephner, trustee, is of no value.

There are many cases in the books and authorities under the Ohio law showing the necessity of compliance with statutory provisions if a valid lien is to be obtained by chattel mortgage. Early in Ohio it was held that in order to effect a lien, there must be compliance with the provisions of the Recording Acts. Where the statute provided for an affidavit to be written on the mortgage and signed by mortgagee, and the notary or officer taking the oath failed to sign, it was held that the statute had not been complied with and there was no lien. Benedict v. Peters, 58 Ohio St. 527, 51 N.E. 37. In that case Judge Minshall said, 58 Ohio St. at page 534, 51 N.E. at page 38: "Creditors examining the records for such liens are not required to go beyond the record for the purpose of learning whether an instrument on which there is no duly certified sworn statement required by the statute can be shown to have been properly executed in this regard."

█ Since the statutory provisions with reference to execution of a chattel mortgage are intended to protect third persons, including a trustee in bankruptcy under Sec. 70, sub. c., the chattel mortgage, as against them, must be executed in strict compliance with the statutory requirements. National Cash Register Co. v. Friedlander, 7 Ohio N.P. 170, 4 Ohio Dec. 347; Columbus Merchandise Co. v. Kline, 6 Cir., 248 F. 296.

█ If a chattel mortgage is executed or filed defectively, the lien of a subsequent execution upon such property is superior to that of such prior mortgage, even though the judgment creditor had notice of such mortgage. Houk v. Condon, 40 Ohio St. 569. Misspelling of the name of the mortgagor so as to mislead subsequent mortgagees and purchasers does not constitute notice. Baker v. Coffman, 24 Ohio N.P., N.S., 259.

█ Defect in the form of or omission in the content of an instrument justifies the court in concluding that the filing of such an imperfect instrument is the legal effect of non-recordation. In re Schilling Press, D.C., 52 F.Supp. 569, 55 Am.Bankr.Rep., N.S., 257, affirmed Schilling v. Rockmore, 2 Cir., 141 F.2d 643, 152 A.L.R. 1094; 55 Am.Bankr.Rep., N.S., 279; Timmer v. Talbot, D.C., 19 F.Supp. 687, 36 Am.Bankr. Rep., N.S., 84.

### Mortgage of June 12, 1948 to National Brass & Copper Company, Inc.

On June 12, 1948, Wright executed its new mortgage and factors lien direct to National, which new mortgage sought to correct the deficiencies of the prior mortgages. It gave the place of business of the mortgagor and the mortgagee, the location of the chattels, but instead of describing accurately the goods and chattels on hand in December 1946 or December 1947, it described and listed the chattels on hand on June 12, 1948 and later on October 22, 1948 when said chattels were moved to another location, a new mortgage was executed and delivered setting forth the new location of said assets.

Counsel for National urges that the mortgages of December 1946 and 1947, although not creating a valid lien in law, on the after acquired property did create an equitable lien, since the new mortgage was executed in good faith, equity should be done and complete that which was intended to be done. This, the trustee cannot agree with for two reasons: First, the Chandler Act struck down the doctrine of equitable liens, and second, National comes into Court with

dirty hands and the axiom of "he who seeks equity must do equity" applies.

When we state that the Chandler Act struck down the doctrine of equitable liens, we mean that prior to the Chandler Act, one who had an agreement for a lien and pursuant to said agreement a legal lien was created, some Courts held that the legal lien so created dates back to the day the equitable lien arose.

Sec. 67, sub. d(5) and Sec. 70, sub. e(2) of the Bankruptcy Act now lays down the law that the transfer takes effect at the time "when it [becomes] so far perfected that no * * * creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein". In our case that would be on June 14, 1948, the date when the new mortgage and factors lien was filed. Prior to said time, any creditor with judgment could levy on said property and secure a superior right in said property to the transfer of National or Hephner as trustee for National.

It will be further noted that Sec. 70, sub. e(1) gives the trustee the right to strike down any lien if same is fraudulent or voidable under any applicable Federal as well as State law. The Federal law applicable is found in Sec. 67, sub. d. The State law applicable is Sec. 8618, 11104 and 11105 of the General Code.

There is no dispute over the fact that the property sought to be covered by the liens of June, 1948 was the property of Wright Industries, Inc.; nor that a voluntary petition in bankruptcy was filed by Wright Industries, Inc. herein on November 12, 1948; that the chattel mortgage and factors lien in issue were filed with the Recorder of Columbiana County on June 14, 1948 and October 22, 1948; nor that the trustee represents creditors of the bankrupt who were creditors at the time of said transfer (June 1948) and said creditors filed provable claims herein and said claims were allowed. Thus, the only elements under Sec. 67 at issue are (a) was the debtor insolvent on June 12, 1948, and did National have probable cause to believe them insolvent, and (b) was the transfer made with actual intent to hinder, delay or defraud creditors (c) within one year of Bankruptcy.

Enough of the Bankruptcy Law has been cited to establish the point that if the evidence proves the elements of Section 67, sub. d of the Bankruptcy Act, the mortgage in question is void as against the trustee without any reference to the Ohio law on the subject. It will be noted that Section 70, sub. e gives the trustee the right to strike down any lien if same is fraudulent or voidable under any applicable Federal as well as State law.

Probably the proof is sufficient to void the mortgage under the Federal law but in this connection an examination of the Ohio law on the same subject, since either is available to the trustee, shows this mortgage fails to create a valid lien in a bankruptcy proceeding.

■■■ Under Section 8618 of the General Code, the transfer to be void must be made or obtained "with intent to defraud creditors"; knowledge by the grantee, of such intent, is immaterial; Ursak v. Sivanick, 56 Ohio App. 434, 10 N.E.2d 1017; City Trust & Savings Bank v. Weaver, 68 Ohio App. 323, 40 N.E.2d 953.

■■■ Under Sections 11104 and 11105, a transfer "made in trust or otherwise * * * in contemplation of insolvency and with a design to prefer [and] with intent to hinder, delay or defraud creditors, shall be void". To avail one's self of said section, proof must be established that the transferee had knowledge of the fraudulent intent. However, it will appear Section 70 of the Bankruptcy Act has been interpreted that any transfer avoided under State law will be so held in the Bankruptcy Court and the rule of the State Courts there followed.

The Supreme Court of the United States held in Stellwagen v. Clum, 6 Cir., 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507, 41 Am. Bankr.Rep. 1, that the Bankruptcy Act did not suspend the right of the trustee under the statutes of Ohio to challenge a transaction for the common benefit of bankrupt's creditors. This has been followed by the Court of Appeals of this circuit in Irwin v. Maple, 6 Cir., 252 F. 10, 41 Am.Bankr.

Rep. 532, where these two sections of the Ohio statutes as to fraudulent conveyance were construed by the Court. Judge Warrington considered many of the Ohio cases which have been urged in petitioners brief and there held that under section 11104 the trustee was empowered to take possession of all assets and administer for the equal benefit of the creditors. This was the rule followed by this Referee in Re Sheir et al., 16 Am.Bankr.Rep., N.S., 589.

Brief of counsel for National admits (page 19) insolvency of bankrupt on June 12, where it is stated, "of course, the corporation was upon June 12, 1948, unable to pay its debts as they matured and was therefore insolvent within the meaning of Sec. 11104 of the General Code of Ohio."

The rule was early established in Ohio, in Mitchell v. Gazzam, 12 Ohio 315, 316, at page 336 by the Supreme Court interpreting assignment statutes, now General Code, §§ 11104, 11105, to the effect that "a design to prefer a creditor over others constitutes a preference under the statute." At page 336 of 12 Ohio the Court said: "If, in contemplation of insolvency, and with a design to prefer one creditor over another, the debtor assign his property to such creditor, or any other person, in trust, to satisfy the debt of such creditor designed to be preferred, and to account for the application of the property so transferred, or the residue after the payment of such debt, it matters not what may have been the manner or form of such transfer, the court would look to the substance of the thing done, and hold such creditors or other person receiving such transfer, a trustee for all the creditors. The Court will not require fraud to be proven against the assignee. A mere design on the part of the debtor, in contemplation of insolvency, will bring such assignment within the statute. The statute will not permit a debtor in failing circumstances, in contemplation of insolvency, to interpose between himself and his creditors a trustee to secure a preference to some creditors over others. The situation of the debtor making the assignment, and the design with which he made it, must be gathered from all the circumstances in the case. It is the motive, de-

sign, and situation of the assignor, that give character to the assignment, and bring it within the operation of the statute."

This rule was applied by Judge Westenhaver in the Western Division of this District, in Lyons, Trustee v. Riker, 1939, 29 Ohio Law Rep. 324, where he quotes from Stellwagen v. Clum, supra, and Irwin v. Maple, supra, to the effect that the Bankruptcy Court will follow the rule of the State Court in such cases. Judge Westenhaver said: " * * * That Smith was insolvent within the definition of insolvency given to this section. Insolvency in this law means an inability to pay debts as they become due in the ordinary course of daily transactions, and if, from such a deranged state of his affairs and a sense of inability to meet his moneyed engagements, the debtor transfers property to a creditor, he is regarded as having done so in contemplation of insolvency. Cincinnati Equipment Co. v. Degnan [6 Cir.], 184 F. 834, 840; Mitchell v. Gazzam, 12 Ohio 315, 316. This was Smith's situation, and all the facts surrounding the execution of the mortgage show that he acted in view thereof and with the intent to secure his existing indebtedness to Riker as well as to obtain a new loan of $800. Likewise, Riker had knowledge of facts such as must charge him with knowledge of Smith's insolvency in this sense and having participated in that intent to create a preference. Riker knew that Smith was hard up and short of cash. It is fairly inferable that he knew that by reason thereof Smith was unable at that time to pay his debts in the usual course of his daily transactions. He knew that Smith was unable to pay his debt when it matured. He knew Smith's willingness to agree to pay a commission of $375 for a new cash loan of $800. These facts and other attendant circumstances produce the conviction that Riker participated in Smith's forbidden intent, despite their present disclaimers."

The second syllabus of the case as reported, is—"But while such mortgage is not void as a preference, because of fraud, it is voidable as a preference as to pre-existing indebtedness."

The Court goes on to allow a valid lien for $800, new money furnished at the time of the mortgage and denies lien for all of the old pre-existing debt. In like situations the lien was allowed for new money by Judge Warrington in Irwin v. Maple, supra, and by this Referee in Re Sheir et al., supra.

In the case at bar there was no new money, only past consideration for the mortgage executed on June 12, 1948 by bankrupt to the National Brass and Copper Company, so the claim of lien must fail.

### Claim of Respondent National that in Equity its Chattel Mortgage is Valid.

Finally counsel for National urges that since equity regards as done, that which ought to be done, that if possession is taken under the power vested in a chattel mortgage covering after acquired property before the rights of other creditors intervene, equity will protect the lien so perfected by taking possession and will substitute the execution and delivery of the June 1948 mortgage and factor's lien for possession. He relies for aid on Francisco v. Ryan, 54 Ohio St. 307, 43 N.E. 1045, 56 Am. St.Rep. 711 and Boyer v. M. D. Knowlton Co., 85 Ohio St. 104, 97 N.E. 137, 38 L.R.A., N.S., 224.

It is significant that no question of good faith is raised in the first case and in the second, 85 Ohio St. at page 119, 97 N.E. at page 139, the Court says "There is no evidence to sustain the charge of fraud". And at page 316 of 54 Ohio St., 43 N.E. at page 1048, Judge Williams said: "Those of equitable cognizance, applying the maxim that equity regards that as done which ought to be done, hold that under such a mortgage a lien attaches to the property as soon as it comes to the mortgagor's ownership; while at law it has been held that it creates no present lien, nor one as the property is acquired, but as between the parties it operates only as contracts for a lien, which may be made effectual for the benefit of the mortgagee by possession lawfully obtained of the property, not only as against the mortgagor himself, but also as against any subsequent legal process issued against him, or disposition attempted to be made by him."

So the conclusion must be that the Ohio Law furnishes no aid to National's position, and if the evidence establishes that the mortgage and factor's lien of June 1948 was made in contemplation of insolvency and with a design to prefer it over the other creditors, and with the intent to hinder, delay or defraud creditors, which fact was known to National, then said mortgage and factor's lien are void under the Ohio Law.

The leading case on the question of fraud in bankruptcy proceedings in Pepper v. Litton, 1939, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, 41 Am.Bankr.Rep., N.S., 279, where the Supreme Court has spoken and in the syllabus says of the conduct of a director or stockholder of an insolvent corporation:

"The power of the bankruptcy court to disallow or subordinate claims upon equitable grounds, even claims which have been reduced to judgment, exists with respect to claims presented against an officer, director or stockholder against a bankrupt corporation; since a director or a controlling stockholder is a fiduciary accountable to creditors as well as stockholder, his contracts with the corporation will be sustained only upon proof of their inherent fairness from the viewpoint of the corporation and those interested therein, and in bankruptcy the fiduciary obligation of such a claimant is enforceable by the trustee.

"The fact that the dominant stockholder of a bankrupt corporation perfected a judgment lien against the bankrupt's assets more than four months before bankruptcy (upon a salary claim which the bankruptcy court finds should not be allowed) is no obstacle to equitable relief where that lien was but a step in a general fraudulent plan.

"The four months' provision of the Bankruptcy Act is certainly not a statutory limitation on equitable defenses arising out of a breach of fiduciary duties by one who seeks allowance of a claim."

The finding must be that the mortgages to Hephner, trustee for the Firestone Bank, and the mortgage to the National Brass and Copper Company, Inc., fail to establish a lien on the chattels of this bankrupt.

An order may be entered denying liens of all cross-petitioners and claims are to be allowed as general claims.

Murray A. Nadler, Youngstown, Ohio, for trustee.

Ross E. Diser, Youngstown, Ohio, for National Brass & Copper Co., Inc.

Riddle & Riddle, Lisbon, Ohio, for bankrupt.

JONES, Chief Judge.

This is a petition for review of an order of the Referee in Bankruptcy that the mortgage and factor's lien of the petitioner were invalid as against the claim of the trustee.

The Referee held that (1) the mortgage and lien were fraudulent transfers under Section 67, sub. d(2) (d) of the Bankruptcy Act; (2) the mortgage and lien were preferences under Ohio law; and (3) the mortgage and lien were fraudulent conveyances under Ohio law.

It is sufficient to state that the Referee's holding that the mortgage and lien were fraudulent conveyances under the Bankruptcy Act is adequately supported by that part of the record upon which the Referee's ruling was based. Since the Referee's finding is one of fact, the Court is not able to say that he was clearly in error in his interpretation of the evidence; but rather, is justified in concluding the ruling of the Referee is correct.

Thus it is unnecessary to consider petitioner's contention as to the second and third holdings set forth above.

The petition for review will be denied and dismissed and the report of the Referee approved and confirmed.