DULUTH TRUST COMPANY v. MELVIN J. CLARK.[1]

September 8, 1897.

Nos. 10,625—(233).

**Insolvency—Preferences—Secured Debt—Payment Out of Security.**
A payment by an insolvent debtor on a secured debt may constitute an unlawful preference, under the insolvent law, where the security is inadequate. But it cannot be an unlawful preference if the payment is made out of the proceeds of the collateral security itself.

**Same—Evidence.**
*Held*, that there was no evidence in this case that the payment sought to be recovered back was made with any intent to give a preference, or that such payment could have resulted in a preference.

[1] Reported in 72 N. W. 127.

Appeal by plaintiff, as assignee of the B. B. Richards Lumber Company, from an order of the district court for St. Louis county, Moer, J., denying its motion for a new trial; the action having been dismissed when plaintiff rested. Affirmed.

*Cotton, Dibell & Reynolds,* for appellant.

*Cash, Williams & Chester,* for respondent.

MITCHELL, J.

This action was brought to recover back $5,000 paid by the insolvent assignor to the defendant in September, 1896, upon the ground that it was made in contemplation of insolvency, with a view of giving the defendant a preference over other creditors, and that the defendant knew, or had reasonable cause to believe, that his debtor was insolvent.

While plaintiff's counsel in his brief disputes the fact, yet the evidence is conclusive that the payment was made on the contract of October, 1894, between the defendant and insolvent, set up in the answer. The fact that it was paid on interest, and not on principal, and that a note had been taken for the amount, by which an extension was granted, does not alter the case. By the contract referred to the defendant agreed to sell, and the lumber company agreed to buy, a large amount of standing timber for $265,000, payable in instalments extending over a number of years. In the meantime the lumber company was to have the privilege of going on the land, and cutting the timber and manufacturing it into lumber, but the title was to remain in the defendant until the purchase price of the timber was paid: provided, however, that the lumber company should have the right to pay for any lot of the manufactured lumber, in blocks of one million feet, at a specified rate per thousand feet (which should be applied as payments on the contract), and upon making such payments the title of the block of lumber so paid for should vest in the lumber company, and should be so marked as to identify it and distinguish it from the balance of the lumber, the title to which remained in the defendant.

The lumber company built a mill, and proceeded, under this contract, to cut timber and manufacture it into lumber, which constituted their exclusive business, or substantially so. They had thus cut and manufactured a large amount of this timber, much of which

they had sold, but still had a large quantity on hand. All the expenses incurred and debts contracted in the business, so far as paid at all, were paid out of the proceeds of the lumber cut and manufactured under this contract. The defendant does not seem to have enforced or insisted upon the terms of the contract very strictly; for it appears that the lumber company had, with at least his silent acquiescence, sold much of the lumber, without having paid for it at the rate and in the manner specified in the contract, and used the proceeds in their business. In the spring of 1896, the lumber company being in arrears about $65,000 in its payments on this contract, defendant granted it an extension, upon its executing to him promissory notes for $15,000 for interest on the overdue principal. It is $5,000 paid in satisfaction of one of these notes which is sought to be recovered in this action.

There is no evidence that this note was taken in absolute payment, and the presumption is that it was not. The note was paid out of the proceeds of lumber cut and manufactured under the contract referred to and set up in the answer, and there is no evidence that the lumber company had acquired title to such lumber by making payments in the manner prescribed in the contract. In fact, as far as the evidence goes, it strongly tends to prove that it had not. The presumption, therefore, is that the money with which this payment was made was realized from the sale of lumber, the title to which was in the defendant himself. In his brief, plaintiff's counsel disputes this. The evidence shows that the lumber company obtained the money temporarily from Mitchell & McClure, and then repaid Mitchell & McClure out of the proceeds of the lumber; so that we are justified in saying that, in effect, defendant was paid out of the proceeds of his own lumber, or at least of lumber the title to which he held as security for the debt. On the trial there was evidence tending to prove that the lumber company was insolvent, within the meaning of the statute, when it paid the $5,000 to the defendant. The testimony of Poole, the lumber company's secretary and agent, also tended to show that defendant had notice of its insolvency when he received the money, although his testimony is flatly contradicted by that of defendant, and is ap-

parently seriously impeached by his own letters written to the defendant during the spring and summer of 1896.

The plaintiff offered to prove that the value of the timber remaining standing, and of the manufactured product of that which had been cut and then remained on hand and in possession of the lumber company, was not more than one-half of the total amount due the defendant on the contract set up in his answer,—in other words, that the value of the security which defendant held was not equal to more than half of the debt secured. This evidence the court excluded, holding that it was "incompetent, irrelevant, and immaterial for any purpose whatsoever." The only questions presented by the assignments of error, worthy of special notice, are the correctness of this ruling, and of the court's action in dismissing the case when the plaintiff rested.

The record does not disclose the particular ground or view of the law upon which the court excluded the evidence referred to. If it was that there can never be an unlawful preferential payment, under the insolvent law, where the creditor holds any, although inadequate, security for the debt, clearly such is not the law. There is nothing in the record to justify us in attributing any such erroneous view of the law to the learned trial judge. But, even if such was the ground of his ruling, it was error without prejudice, for the reason that there was no evidence that the payment was made with a view to give the defendant a preference over other creditors, or that, under the circumstances, the payment could have effected or resulted in any such preference. Hence, even if the offered evidence had been admitted, the result would necessarily have been the same, and the action still have been properly dismissed. In view of the fact that the payment was, as we have already suggested, made out of the proceeds of the security which defendant held, and the further facts that the payment was so small, compared with the amount of the whole indebtedness due the defendant, and that the lumber company was at the same time making payments to its other creditors proportionately as great or greater than those made to the defendant, and that, too, out of the proceeds of the very lumber which defendant held, or was entitled to hold, as security for his debt, it is legally impossible that any preference could have

resulted from this payment, and morally improbable that any preference was intended.

It would be impracticable as well as useless to review the evidence, beyond the outline of it which we have already given, but an examination of the entire record impresses us that plaintiff's claim is wholly without merit.

Order affirmed.