GEORGE H. CLARKE v. NATIONAL CITIZENS' BANK OF MANKATO.

October 31, 1898.

Nos. 11,204—(38).

Insolvency—Recovery of Payments Constituting Preference—Bill of Sale—Collateral Security—Finding Sustained by Evidence.

In an action by an assignee in insolvency to set aside a bill of sale of personal property, and to recover payments of money made by the insolvent to the defendant, on the ground that they constitute unlawful preferences, under section 4 of the insolvency law of 1881, *held*, that the evidence justified a finding that the bill of sale constituted an unlawful preference, as also the payments, in so far as they were not made out of the proceeds of some prior valid security for the debt.

Chattel Mortgage—Filing by or Possession of Mortgagee—Validity of Mortgage.

If a mortgagee of chattel property files his mortgage, or takes actual and continued possession of the property or its proceeds under his mortgage, before any other right or lien attaches, it is good against everybody, if it was previously valid between the parties, although the mortgage was not filed or possession of the property taken at the time of its execution; assuming that the only objection to it is that the mortgage was not filed or the possession of the property delivered to the mortgagee at the time of the execution of the mortgage.

Warehouse Receipts as Collateral—Payments from Bill of Sale or from Receipts—Burden of Proof on Defendant— Judgment Sustained by Findings.

According to the findings of the court, prior to the execution of the bill of sale the insolvent had executed, as security for his indebtedness to the defendant, warehouse receipts for chattel property, some of which were afterwards also included in the bill of sale referred to. The defendant permitted the insolvent to retain possession of all the property covered by either the receipts or the bill of sale, to sell and dispose of it, and pay part of the proceeds to apply on the indebtedness for which the property was security, and to use part in his own business. The payments sought to be recovered in this action were made out of

the proceeds of property covered by either or both the warehouse receipts and the bill of sale, but the court did not find, except as to $700, what amount of such payments was made out of the proceeds of property covered by the warehouse receipts. *Held* that, under the circumstances, the burden was on the defendant to show what part of the payments was made out of the proceeds of property covered by the warehouse receipts, and hence that the findings, as made, justified an order for judgment against the defendant for the full amount of the payments, except the $700.

Action in the district court for Blue Earth county by the assignee in insolvency of Oscar Cassidy to recover $16,000, the value of certain meats conveyed, and of payments made, in violation of the insolvency law of the state. Plaintiff, as receiver of said insolvent, was subsequently substituted for the assignee. The cause was tried before Cadwell, J., without a jury. Judgment for $7,831.80 was ordered in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appealed. Affirmed, without prejudice to defendant's right to move for a new trial.

*A. R. Pfau* and *Lorin Cray*, for appellant.

If the payments by Cassidy to the bank were made from funds pledged, or from sales of meats pledged by Cassidy to the bank for moneys advanced, more than ninety days before the assignment, then they cannot, under the proofs in this case, be declared fraudulent, or recovered in any event. The warehouse receipts and bill of sale were of the nature of chattel mortgages not filed, open to attack by creditors while unperformed, but not so after the property conveyed thereby had been delivered or appropriated to the payment of the debt secured thereby. In no event is an unfiled mortgage void, except as to such creditors as have no notice of its existence, and the burden of proof of want of notice to creditors or assignee is upon the assignee. Mead v. Randall, 68 Minn. 233; Thomas Mnfg. Co. v. Drew, 69 Minn. 69. See also Chickering v. White, 42 Minn. 457; Williams v. Clark, 47 Minn. 53.

*William N. Plymat* and *Edward J. Cannon*, for respondent.

The bill of sale and warehouse receipts, though given more than ninety days before the assignment, were void because not filed or

recorded. These securities must be considered as chattel mortgages, and are governed by the statutes relating thereto. Merrill v. Ressler, 37 Minn. 82; Walsh v. St. Paul S. Furniture Co., 60 Minn.397; Minnesota Thr. Mnfg. Co. v. Langdon, 44 Minn.37; Berlin M. Works v. Security T. Co., 60 Minn. 161; Farmers L. & T. Co. v. Minneapolis E. & M. Works, 35 Minn. 543; Shay v. Security Bank, 67 Minn. 287; Thomas Mnfg. Co. v. Drew, supra; Grant v. Minneapolis B. Co., 68 Minn. 86. The burden was on defendant to show that all creditors had such notice of the existence of the securities that they are not entitled to take advantage of the failure to file. Thomas Mnfg. Co. v. Foote, 46 Minn. 240; Shay v. Security Bank, supra.

MITCHELL, J.[1]

This action was brought by the plaintiff, as assignee of one Cassidy, an insolvent, under section 4 of the insolvency law of 1881,[2] to set aside a bill of sale executed by Cassidy to the defendant on April 5, 1895, and to recover payments made by Cassidy to the defendant between that date and the date of the assignment in insolvency, which was executed June 12, 1895.

In plaintiff's complaint the sole ground upon which the bill of sale and the subsequent payments were assailed was that they constituted an unlawful preference, under the provisions of the insolvency law; and it is important to keep in mind throughout the consideration of the case the distinction between a security given or a payment made which is voidable as to other creditors solely as an unlawful preference under the insolvency act, and one which is voidable on common-law grounds, as being given or made with intent to hinder, delay or defraud creditors, or because the security was not filed or recorded or the property was not taken possession of by a mortgagee or pledgee as required by statute. An assignee of an insolvent may, as the representative of creditors, in a proper case, assail a payment made or security given on any of these grounds; but the grounds of attack are entirely different.

The trial court found, in substance, that this bill of sale was given and these payments made by Cassidy with intent to give the de-

---

[1] BUCK, J., took no part.          [2] G. S. 1894, § 4243.

fendant a preference upon a pre-existing debt over other creditors, that he was then insolvent, and that the defendant knew that fact. Assuming the bill of sale to have been the only and original security given on the property, and the subsequent payments to have been made out of the proceeds of the property covered by it, or the general funds of the insolvent, and not out of the proceeds of any prior collateral securities, we have no doubt that the evidence amply justified these findings.

But the court found (and for the purposes of this appeal we must assume, as against the respondent, that they are correct) that on December 10, 1894, Cassidy borrowed of the defendant $9,500, and agreed to secure its payment upon meats then in his possession in his packing house in Mankato, and that on the next day, in pursuance of this agreement, he executed and delivered to the defendant a warehouse receipt for a large quantity of meats then actually in his warehouse, which he acknowledged, and agreed to put them in store, and hold on account of the defendant as security for the payment of the loan; that Cassidy, having in the meantime become further indebted to the defendant for overdrafts, on January 3, and again on January 26, 1895, executed to the defendant warehouse receipts for further quantities of meats then in his packing house. The court further finds that, the note for $9,500 given for the loan of December 10, 1894, being still wholly unpaid, on April 5, 1895, Cassidy executed to defendant the bill of sale described in the complaint, of a large quantity of meats then in his packing house, also "72,000 pounds of hams now in the hands of George W. Stone, Chicago, Illinois, upon which last mentioned hams said Stone had a lien for $4,000 theretofore advanced," and that these 72,000 pounds of hams described as being in the hands of George W. Stone were a part of the hams mentioned and described in the warehouse receipt of December 11, 1894. No question is made but that these warehouse receipts and this bill of sale were given merely as collateral security for Cassidy's pre-existing indebtedness to the defendant, except that the warehouse receipt of December 11, 1894, was given to secure a present loan.

The court also finds that after April 5, and prior to June 1, 1895, there was received by Cassidy and the defendant from sales of said

meats described in and covered by said warehouse receipts and said bill of sale at different times, and from many persons and firms to whom said meats had been shipped and sold, various sums of money, which were from time to time, as they were received, deposited in the bank of the defendant, to be applied on the note of $9,500, dated December 10, 1894; that there was so received and deposited in the aggregate the sum of $6,923.19 (according to the amended finding), and that the money was actually so applied; also, that on April 23, 1895, the defendant received from G. W. Stone, of Chicago, the sum of $700 on account of meats sold to him, which was also applied on Cassidy's indebtedness to the defendant. While there is no express finding to that effect, it is fairly inferable from all the findings taken together that this $700 was on account of the 72,000 pounds of hams mentioned and described both in the warehouse receipt of December 11, 1894, and the bill of sale of April 5, 1895.

The court further finds that the warehouse receipts and bill of sale referred to were never filed or recorded in the office of the city recorder of the city of Mankato, wherein Cassidy resided, and that the property therein described was never delivered into the possession of the defendant, but remained in the possession of Cassidy, who, with the knowledge and consent of the defendant, continued up to April 5, 1895, to sell and dispose of the property described in the warehouse receipts, and use the proceeds in his business, without being required by the defendant to apply them in payment of the indebtedness which the receipts were given to secure. In view of other findings of the court, this can only refer to part of the property or its proceeds described in the receipts.

There is no finding that there are any creditors who became such after December 11, 1894. There is no finding that any of the warehouse receipts or the bill of sale was executed with intent to hinder, delay or defraud creditors. The finding that defendant subsequently permitted Cassidy to sell and dispose of the property described in the warehouse receipts, and use the proceeds in his business, without requiring him to apply them on the indebtedness for which the property was security, is merely a finding of an item of evidence of fraud, which is not at all conclusive. Horton v. Wil-

liams, 21 Minn. 187. Neither is there any finding that the warehouse receipts were given by Cassidy with a view of giving the defendant a preference upon a pre-existing debt.

Upon these findings the court held, as conclusions of law:

(1) That the warehouse receipts and the bill of sale were void as to Cassidy's creditors.

(2) That the bill of sale executed April 5, 1895, and the subsequent payments of money, constituted an unlawful preference in favor of the defendant over the other creditors.

(3) That plaintiff was entitled to recover of the defendant the amount of these payments ($6,923.19), with interest. And judgment was ordered accordingly.

This amount included the $700 received from Stone out of the proceeds of the 72,000 pounds of hams included in the warehouse receipt of December 11, 1894, as well as in the bill of sale of April 5, 1895. We infer that all of the property covered by the bill of sale had been already disposed of, and hence no judgment was ordered as to it.

As already suggested, these conclusions of law and order for judgment would have been correct, if the bill of sale had been the first and only security on the property, and the payments had been made out of the proceeds of the property covered by it, or out of the general funds of the insolvent, and not out of the proceeds of prior valid securities. But it appears from the court's findings that these payments were made out of the proceeds of property "described in and covered by the said warehouse receipts and said bill of sale." And it appears from a more particular and special finding that $700 of these payments was derived from the proceeds of property covered by the warehouse receipt of December 11, 1894, as well as the bill of sale of April 5, 1895. In view of what the court finds, as well as what he did not find, it is clear that, so far as the warehouse receipts are concerned, he must have predicated their invalidity as to creditors solely upon the fact that they were never filed or accompanied by an immediate delivery, and followed by an actual and continued change of possession, of the property, and hence that the case stood precisely as if these receipts had never been executed.

This is not justified by the facts found. If a chattel mortgage is filed, or the mortgagee takes actual and continued possession of the property mortgaged or pledged, before any other right or lien attaches, the mortgage or pledge is good against everybody, if it was previously valid between the parties; assuming, of course, that the only objection to it is the mere failure to file it or to take possession of the property at the time it was executed. Jones, Chat. Mort. § 178; Prouty v. Barlow, infra, page 130, 76 N. W. 946. In the present case the rights of creditors attached at the date of the assignment, viz. June 12, 1895. Prior to that time the mortgaged or pledged property had been disposed of, and the proceeds here sought to be recovered paid over to the defendant, and applied on the secured debt. Therefore the mere fact that the warehouse receipts were never filed avails the plaintiff nothing in this action. And payments made out of the proceeds of valid collateral security cannot be an unlawful preference. Duluth Trust Co. v. Clark, 69 Minn. 324, 72 N. W. 127.

There is nothing in the point that the warehouse receipts were void because the property was not sufficiently described. As between the parties, at least, they were certainly valid, and the property capable of identification by parol evidence. Moreover, delivery of the possession of property, or its proceeds, under a mortgage, before rights have been acquired by others, will cure any defect arising from an insufficient description of the property. Therefore upon the findings of fact these warehouse receipts were valid, and so much of the payments as were made out of the proceeds of the property covered by them cannot be recovered as an unlawful preference under the insolvent law. Hence the findings of fact are insufficient to justify the conclusions of law, at least as to the $700 which was derived from the proceeds of the hams covered by one of these warehouse receipts as well as by the bill of sale.

The question of their sufficiency to justify the conclusions of law as to the balance of the payments depends upon the further question, on which party rested the burden of proof,—on the plaintiff to prove how much of them was derived from property not covered by the warehouse receipts, or upon defendant to prove how much was derived from property that was covered by these receipts? In his

complaint the plaintiff assails, as constituting an unlawful preference, merely the bill of sale and the payments of money. Aside from an admission of the execution of a general assignment by Cassidy, and his indebtedness to the bank, and the execution by him of the bill of sale to secure a portion of this indebtedness, defendant's answer consists only of a general denial; no mention being made of the warehouse receipts, which, so far as appears, first came to light on the trial.

The defendant presumably had better means than plaintiff of knowing what part of the payments was derived from property covered by the warehouse receipts, and what was not. The facts were presumably more particularly within the knowledge of Cassidy, whom the defendant allowed to remain in possession of the property, sell and dispose of it, and pay the proceeds over to it, or retain them and use them in his business. As both parties claim under Cassidy, he occupies practically the same relation to the one as to the other. Plaintiff had made out a case entitling him to recover the full amount of these payments, unless it was made to appear that they were made out of the proceeds of some valid security given prior to the bill of sale of April 5, 1895; and we are of opinion that the burden of proving that fact was upon the defendant.

The court finds that the payments were made from sales of meats described in and covered by the warehouse receipts and the bill of sale, without specifying how much from each. This finding does not mean that all the money was derived from property covered by both securities, but from property covered by one or the other. The only other finding on the subject is that a particular item of the property covered by the bill of sale was also covered by the warehouse receipt of December 11, 1894. No error is assigned as to these findings, and no other or more specific findings were asked for by the defendant. Therefore the findings of fact are sufficient to support the order for judgment, except as to the $700 already referred to. This would require merely a modification of the order for judgment.

But, in view of the fact that the trial court seems to have proceeded and made his findings upon what we consider an erroneous

theory of the law applicable to the case, we do not think that we ought absolutely to order judgment to be entered for the amount thus reduced.

This cause is therefore remanded, with directions to the court below to modify its order for judgment by deducting from the amount named therein the sum of $700, and to render judgment for the plaintiff for the balance, unless, in its discretion, it shall grant a new trial for cause shown and upon the application of either party. So ordered.

An application for reargument having been made, the following opinion was filed November 16, 1898:

PER CURIAM.

The main ground upon which counsel for the defendant base their application for a reargument is that the evidence shows that a large part of the so-called "preferential payments" were made out of the proceeds of property covered by the warehouse receipts. It is sufficient answer to this to say that no findings upon that point were asked for by the defendant. The application is therefore denied.

The plaintiff moved that the decision filed be so amended as to affirm the order appealed from absolutely. The original findings, and certain amendments of them, were included in the record; and, our attention not having been directly called to the matter by counsel, we overlooked an amendment by which the trial court excluded from the order for judgment the $700 received from Stone referred to in the opinion. We can place no other construction on the amendment. The opinion should therefore be corrected in that regard.

But we are still of opinion that, in view of the erroneous theory of law upon which the court below proceeded on the trial, which may have affected its findings, the defendant ought not to be absolutely precluded from renewing its motion for a new trial. Whether it can make any showing entitling it to any such relief, we do not know, and cannot anticipate. The order in the opinion heretofore filed is hereby amended so as to read as follows:

"The order appealed from is hereby affirmed, without prejudice, however, to defendant's right to move for a new trial."