### In the Matter of Herman BILLINGS, doing business as Billings Drug Store, Bankrupt.

### No. 23149.

United States District Court
W. D. Missouri, W. D.

Feb. 3, 1959.

As Amended March 17, 1959.

Paul E. Berman (of Casemore, Berman, Montgomery & DeLeve), Kansas City, Mo., for trustee George V. Aylward, Jr.

Samuel J. Molby (of Watson, Ess, Marshall & Enggas), Kansas City, Mo., for Borden Co.

DUNCAN, Chief Judge.

The matters before the court are two Petitions for Review of the decisions of the Referee in Bankruptcy, one of which involves the granting of the Petition for Reclamation filed by the Borden Company for possession of certain personal property secured by a chattel mortgage executed by the bankrupt on January 9, 1956, filed by the Trustee in Bankruptcy.

The second petition for review is that of the Borden Company for a review of the order of the Referee denying its Petition for Reclamation of an ice cream cabinet, under the provisions of a chattel mortgage executed by the bankrupt on June 29, 1956. The certificate of the Referee set out findings of fact and conclusions of law.[1]

---

1. (Caption omitted)

"4. A summary of the evidence on the Petition for Reclamation filed by The Borden Company, and the Findings of Fact are as follows:

"(a) On February 18, 1955, Herman Billings executed and delivered to The Borden Company his note for $3000.00 secured by a chattel mortgage. This chattel mortgage was filed for record on February 19, 1955.

"(b) On January 6, 1956, Herman Billings and Sadie Billings executed and delivered to The Borden Company their

A transcript of the proceedings before the Referee involving the two petitions aforesaid, is also before this court. The essential facts are not in dispute. The evidence taken before the Referee reveals that prior to February 18, 1955, the bankrupt had been engaged in the drug business in Kansas City, Missouri, and on that date the Borden Company advanced to him the sum of $3,000. Bankrupt signed a note and chattel mortgage on the fixtures and equipment in the store, to secure the payment of the note. By January 6, 1956, the bankrupt had paid $1,250 on this note, leaving a balance of $1,750.

Some time during the latter part of 1955, the bankrupt determined that he wanted to move his drugstore to another location, and he needed additional capital to do so. He applied to the Borden Company for an additional loan. It was agreed that the Borden Company would advance him the sum of $6,750 in addition to the amount of the unpaid loan, and he executed a new note and chattel mortgage in the sum of $8,500.

The note and chattel mortgage were dated January 6, 1956, but the money was not actually paid to the bankrupt and the chattel mortgage delivered until January 9, 1956, during all of which time the original chattel mortgage continued to remain on file, unreleased. On January 12, 1956, the Borden Company placed the chattel mortgage addressed to the recorder of deeds in the mail, and it was filed by the latter on January 13, 1956. Thus, four days elapsed between the delivery of the chattel mortgage and the date of its recording.

The law presumes that a chattel mortgage is effective as of its date, but this presumption is a rebuttable one, and it may be shown that actually it was not effective as of that date. In this case, the evidence clearly shows that it was not

note for $8500.00 secured by a chattel mortgage. This chattel mortgage was filed for record on January 13, 1956. The balance due on this note is $6177.88.

"(c) The $8500.00 note included a re-financing of the balance of $1750.00 on the original $3000.00 note dated February 18, 1955, plus the sum of $6750.00 then being loaned to Herman Billings by The Borden Company.

"(d) The sum of $6750.00 was disbursed by The Borden Company to Herman Billings on January 9, 1956, and was deposited by him in his bank, the Kansas City Trust Company.

"(e) The chattel mortgages given to secure the notes dated February 18, 1955, and January 6, 1956, respectively, cover substantially the same fixtures and equipment contained in the drug store of Herman Billings.

"(f) On June 29, 1956, Herman Billings and Sadie Billings executed and delivered to The Borden Company their note for $548.61 secured by a chattel mortgage on one CV–220 Schaefer Ice Cream Cabinet, Serial No. 5-642-047. This chattel mortgage was filed on July 13, 1956. The balance due on this note is $293.35.

"5. Conclusions of Law:

"(a) The note and chattel mortgage dated February 18, 1955, is paid and is therefore not in issue.

"(b) Although the second note and chattel mortgage are dated January 6, 1956, the funds were not actually disbursed by The Borden Company till January 9, 1956. The chattel mortgage was filed on January 13, 1956, four days thereafter. This is not an unreasonable delay.

"(c) The note and chattel mortgage dated June 29, 1956, were filed for record on July 13, 1956, a delay of 14 days. This is an unreasonable delay.

"6. The Reclamation Petition of The Borden Company as to one CV–220 Schaefer Ice Cream Cabinet, Serial No. 5-642-047 is overruled. In all other respects said Reclamation Petition is sustained.

"7. The exhibits consist of the following:

"a. Reclamation Petition

"b. Order on Reclamation Petition

"b.1, Memorandum brief of Borden Company

"c. Petition for Review filed by The Trustee

"d. Petition for Review filed by the Borden Company.

"e. Transcript of Proceedings.

"8. The questions presented are the alleged errors set forth in the respective petitions to review.

"Dated: November 10, 1958."

effective as between the parties until January 9, 1956. Mackowik v. Kansas City, St. J. & C. B. R. Co., 196 Mo. 550, 94 S.W. 256; Exchange Bank of Kahoka, Mo. v. Morgan, 8 Cir., 222 F.2d 567.

After the bankrupt moved into his new store, he decided to and did buy an ice cream cabinet from the Borden Company for the sum of $548.61, and executed a promissory note and chattel mortgage therefor, dated June 29, 1956, but which was not recorded until July 13, 1956. By the time the bankruptcy proceedings were filed, this indebtedness had been reduced to the sum of $293.35.

It was upon this evidence that the Referee concluded that:

"(a) The note and chattel mortgage dated February 18, 1955, is paid and is therefore not in issue.

"(b) Although the second note and chattel mortgage are dated January 6, 1956, the funds were not actually disbursed by The Borden Company till January 9, 1956. The chattel mortgage was filed on January 13, 1956, four days thereafter. This is not an unreasonable delay.

"(c) The note and chattel mortgage dated June 29, 1956, were filed for record on July 13, 1956, a delay of 14 days. This is an unreasonable delay."

There was no evidence in the record one way or the other, as to what occasioned the delay either with respect to filing the first or second mortgage. Section 443.460 V.A.M.S. provides:

"No mortgage * * * of personal property hereafter made shall be valid against any other person than the parties thereto, * * * unless the mortgage or deed of trust, or a true copy thereof, shall be filed in the office of the recorder of deeds of the county where the mortgagor or grantor executing the same resides, * * * and such recorder shall endorse on such instrument or copy the time of receiving the same, * * *."

It will be observed that the statute does not provide the time when such mortgage shall be filed, but it has long been the rule in Missouri that such a mortgage must be filed within a reasonable time. What is a reasonable time depends upon the circumstances of each particular case.

Beginning with Bryson v. Penix, 18 Mo. 13, the Supreme Court of Missouri held:

"Our statute prescribes no time within which a deed of conveyance shall be recorded. Under such circumstances a party must have a reasonable time for that purpose which is to be determined from the circumstances of each case, and when a deed is recorded within a reasonable time, it has relation back to the time of the execution."

In Wilson v. Milligan, 75 Mo. 41, the court stated:

"A mortgagee who has had both the time and opportunity to file his mortgage for record and postpones doing so to a future time, cannot be said to have filed same within a reasonable time."

The Missouri courts have consistently followed the principle laid down in the above decisions, without variation, and have been rather strict in their construction of that statute, where the rights of others have intervened between the time of the execution of the chattel mortgage and the time of its filing. In some instances, a few hours was held unreasonable, and in other instances, several days was held not to be unreasonable.

So far as I have been able to find, the Missouri decisions have been uniform in holding that the filing of a mortgage under the statute does not affect the validity of the lien as between the parties to the transaction, and that only parties whose rights accrue between the time of the execution of the chattel mortgage and its filing may complain of delay.

The trustee bases his authority for avoiding the effect of the lien of the

chattel mortgage on § 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110 which provides:

> "The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of frauds, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

and particularly the latter part of that section which provides:

> " * * * shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor *actually exists*." (Emphasis supplied.)

The interpretation of this section seems to have been referred to by many of the courts as the "Strong Arm Clause" in § 70, sub. c. It is also referred to as the definition of the "perfect" or "ideal" hypothetical creditor clause.

The interpretation of this section seems to have created considerable confusion in the Federal courts. The principal case upon which the Trustee relies is Constance v. Harvey, 2 Cir., 1954, 215 F.2d 571. In its first and original opinion, that court apparently determined that § 70, sub. c under the laws of New York, did not place the trustee in any different position than any other creditor, or rather, that he was not entitled to the mortgaged property as opposed to the mortgagee where no intervening rights occurred.

However, in an opinion *sua sponte*, the court took occasion, as it said, to correct the opinion which had already been filed, and there it held that § 70, sub. c, was applicable, even though there was no creditor in existence who could take advantage of it.

This opinion has been followed by the New York courts since that time, and one or two other courts have followed it, but in most instances where it has been followed, it has been criticized as an erroneous interpretation of that section, and other courts have refused to follow it entirely. Even in one of the New York District Courts where the court felt constrained to follow the decision, the Judge said this: [In the matter of Gondola Associates, Inc., 132 F.Supp. 205].

> "The referee deemed himself bound by the decision of Constance v. Harvey, 2 Cir., 215 F.2d 571, at page 575 to the effect that the trustee occupies the position of an '"ideal" hypothetical creditor' and therefore must succeed, whether or not in fact there was in existence any such individual to attack the chattel mortgage. The result here reached seems incongruous; a state statute enacted to protect creditors who are such at a given date is held to operate in favor of a trustee in bankruptcy who really stands in empty shoes, for he occupies a space which does not exist, since there is no creditor who might enforce the right which he asserts."

The court then cites the views which he says are not in accord with Sanford v. Boland, 287 N.Y. 431, 40 N.E.2d 239, a New York case. The court further stated:

> "I find it difficult to reconcile the present decision with the equitable purposes of the Bankruptcy Act, but agree with the referee that the opinion in the Constance case seems to compel such a result; until a possible reconsideration of the subject by a reviewing court, the present duty is clear to deny the petition to review."

In another case, a District Court in In re Wright Industries, Inc. (Kearney v. National Brass & Copper Co., Inc.), 93 F.Supp. 58, 62 the court, in discussing § 70, sub. c, said:

"The trustee in bankruptcy may rely upon Section 70, sub. c for the nature and basis of his claim to the chattels sought to be covered by the Hephner mortgages. Section 70, sub. c heretofore quoted confers upon the trustee 'by force of law' the status of the ideal or 'perfect' creditor, irreproachable and without notice armed with every right and power which is conferred by the law of the State upon its most favored creditor. Such hypothetical status depends for meaning upon the substantive law which it does not explicitly indicate, but which it incorporates by reference. Hence the trustee's powers in every case governed by this portion of Sec. 70, sub. c, are those which the State law would allow to a supposed creditor of the bankrupt, who had at the date of bankruptcy completed the process for the perfection of a lien upon property in the bankrupt's or the Court's possession. Whether a trustee is entitled to such a status, and the conditions under which he may attain it, are federal questions covered by the Bankruptcy Act, but the extent of the trustee's rights, remedies and powers as a lien creditor, are measured by the substantive law of the jurisdiction governing the property in question—that is, in this case the law of the State of Ohio."

The trustee insists that this court should be bound by and follow the construction placed on the section by the New York court, that in the interest of uniformity, various courts and circuits should attempt to unify the law, and he cites an opinion of this court in which it is stated that while the decisions of another circuit are not binding upon this court, they are indeed persuasive. I quite agree with that statement, but, where, in the opinion of the court, the construction of another court or circuit is clearly erroneous, there is no duty upon this court to follow such a decision.

I think the construction placed on the statute in the Constance case was clearly erroneous, and that it was never intended to give the trustee in bankruptcy any such authority as that case holds. I am thoroughly in accord with the statement of Judge Byers in the Gondola case when he stated that it created an incongruous situation.

The question of whether or not there is a valid lien is to be determined by the laws of Missouri, and whatever rights any such creditor or lienholder may have under such laws are vested in the trustee in bankruptcy under the provisions of § 70, sub. c. In re American Textiles Printers Co., D.C., 152 F.Supp. 901.

If there had been any person capable of asserting any right to the mortgaged property on the day of the bankruptcy, even though no such person existed, then the trustee in bankruptcy would have acquired such rights. That, however, is not the situation in this case. There was no "perfect" or "ideal" hypothetical creditor on the day of the bankruptcy, because no rights had intervened between the time of the execution of the chattel mortgage and the date of its filing, and could not therefore, on the day of the bankruptcy, have asserted any right to the property. Whatever rights may accrue to any person subsequent to the filing of the chattel mortgage, of course, would not affect the lien of the mortgagee.

The question is raised by the trustee as to the claim of Drew Ridgeway, who at the time of the execution of the second mortgage, had been employed by the bankrupt to do cabinet work in connection with the location of the new store. At the time of the filing of the petition in bankruptcy, he was a creditor of the bankrupt to the extent of $983.38.

The Referee made no finding as to whether or not there were any interven-

ing creditors between the time of the filing of either chattel mortgage in controversy, but a review of the evidence contained in the transcript of the hearing, reveals that for the week beginning January 5 and ending January 12, 1956, the creditor Ridgeway performed work and labor of the value of $169.92, and that for the week of January 12 to 19, he performed services for work and labor to the extent of $227.63.

The evidence further shows that on February 15, 1957, long subsequent to the filing of the last mortgage, the bankrupt gave Ridgeway his promissory note in the sum of $1,359, the amount of the unpaid indebtedness at that time. Ridgeway testified that he took the note in payment of the account. The original contract between the bankrupt and Ridgeway was $1,710, and some extras amounting to $509.63. Before execution of the note, the bankrupt gave Ridgeway his check for $500 the latter part of January, 1956. The bankrupt made further payments on the note in 1956, until it was reduced to the amount of $1,359.63, as heretofore stated.

■ At the time this indebtedness accrued between January 5 and 13, 1956, the original mortgage filed on February 19, 1955, was still of record, and notice to the world; it had not then been released and was not released at the time of the bankruptcy hearing, and it covered approximately the same property as that described in the $8,500 mortgage, which was recorded on January 13, 1956, and thereafter became notice to the world, so that no rights superior to those of the mortgagee accrued to Ridgeway during any time the amounts heretofore mentioned, were earned, and he had no right at the time of the bankruptcy to question the validity of the lien. Consequently, the trustee did not acquire any right to question the validity of the mortgage through the creditor Ridgeway.

If, by any stretch of the imagination, the creditor Ridgeway acquired any rights during that period, they were abandoned by the acceptance of the note in full payment of his claim, executed more than a year after the chattel mortgages were filed.

■ In view of the fact that no rights accrued between the date of the chattel mortgage and its recording, the question of whether or not the time within which it was filed was reasonable, would make no difference as between the parties themselves.

The trustee's Petition for Review will be denied and dismissed, and the report of the Referee in that respect, approved and confirmed.

Next, we come to the second chattel mortgage and the Petition for Review filed by the Borden Company. It will be recalled that in this case the chattel mortgage was dated June 29, 1956, and not filed until July 13, 1956, and it was determined by the Referee that the time of filing was not reasonable, and the Petition for Reclamation was denied.

I think the reasoning applied by the court to the former petition is applicable here. There is no evidence that any intervening creditor existed at the time the petition in bankruptcy was filed. Certainly if there had been any intervening creditor, the 14 day period would clearly have been unreasonable and the mortgagee would not have been entitled to the possession of the property.

The court has not discussed in this opinion the question of what is a reasonable time, or the decisions which have been rendered in connection with such questions, although numerous decisions have been cited to the court. I have not done so because I believed it was unnecessary to a determination of the issues, no intervening creditors having existed.

Certainly it would seem to me that the filing of such chattel mortgages, if they are to afford protection to the mortgagees, should have the same expeditious handling as checks and other commercial paper, and should be handled from day

to day in the usual course of business. Many of the mortgages negotiated are sold to finance companies or to banks. This, of course, must be done expeditiously in the due course of business, and any delay on the part of such mortgagees, or their assignees, may, and should result in the loss of the lien under the chattel mortgage.

But, in view of the fact that the "ideal" creditor did not again exist on the date of the bankruptcy, the time of filing was immaterial as between the parties under the laws of the State of Missouri, and, while I agree with the statement of the Referee that the 14 day period was clearly unreasonable, yet, in view of the fact that no intervening rights attached, the delay did not affect the lien of the mortgagee.

In that respect, the order of the Referee denying the Petition for Reclamation of the Borden Company is reversed.