In the Matter of P.T.G. GRAIN SERV-ICE, also known as Pearson Trucking Group Grain Service, a partnership consisting of Rex Pearson and Marvin L. Pearson, co-partners, and Rex Pearson, Bankrupts.

United States District Court
D. Minnesota,
Sixth Division.
July 20, 1960.

Maloney & Maloney, Aberdeen, S. D., and Field, Arvesen & Donoho, by Cyrus Field, Fergus Falls, Minn., for petitioner, First National Bank of Aberdeen.

Doherty, Rumble & Butler, by Eugene M. Warlich, St. Paul, Minn., for petitioner, Yellow Manufacturing Acceptance Corporation.

Thomas J. Murphy, St. Cloud, Minn., for Trustee in Bankruptcy, Charles G. Satterlee.

DEVITT, Chief Judge.

This proceeding to review the Order of one of the Referees in Bankruptcy raises the issue whether two conditional sales contracts, which were belatedly filed about three months after their execution and about five months prior to the filing of a petition in bankruptcy, are valid against the conditional vendee's trustee in bankruptcy. The holders of the vendor's interests, First National Bank of Aberdeen and the Yellow Manufacturing Acceptance Corporation, have filed petitions for review, pursuant to ch. 575, § 39, sub. c, 52 Stat. 858 (1938), 11 U.S.C.A. § 67, sub. c following an adverse Order by the Referee. The facts in each matter have been stipulated, and because of their similarity, are treated together.

On February 9, 1959 Rex Pearson, the bankrupt, purchased a truck on a conditional sales contract from Voight Buick, Inc. Voight assigned its vendor's interest to the petitioner, Yellow Manufacturing Acceptance Corporation. On May 8 and again on June 6, 1959, the contract was filed with the Register of Deeds for Wilkin County, Minnesota, where Rex Pearson resided and where P.T.G. Grain Service, the other bankrupt, had its place of business.

On April 13, 1959, the P.T.G. partnership purchased another truck under a conditional sales contract from Voight Buick, Inc., which immediately assigned its vendor's interest to the petitioner, First National Bank of Aberdeen. This contract was similarly filed in Wilkin County on June 17, 1959.

On November 4, 1959, both Rex Pearson and the partnership filed voluntary petitions in bankruptcy and were adjudicated bankrupt.

Between the execution date of the first contract, February 9, and its date of recording, May 8, and between the execution date of the second contract, April 13, and the date of its recording, June 17, a simple creditor extended credit to the bankrupts.

The creditor was not influenced by the non-filing of the conditional sales contracts, and no creditors seized the trucks

under legal process or otherwise acquired a lien on them at any time prior to the bankruptcy. There was no agreement, fraudulent or otherwise, between the petitioners and the bankrupts to withhold the recording for the purpose of enhancing the bankrupts' credit standing.

The Referee in Bankruptcy found that petitioners had delayed an unreasonable length of time in recording their contracts and denied the petition for reclamation by concluding that even though there were no creditors in fact who could attack the contracts under Minnesota law, the mortgages were void against the trustee in bankruptcy under § 70, sub. c of the Bankruptcy Act, as amended, ch. 579, § 23(e), 66 Stat. 430 (1952), 11 U.S.C.A. § 110, sub. c, because a hypothetically perfect creditor existed, under Minnesota law, who could have attacked the mortgages.

Section 70, sub. c reads:

"(c) * * * The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

■ The Referee relied on Constance v. Harvey, 2 Cir., 1954, 215 F.2d 571, 575, certiorari denied 1955, 348 U.S. 913, 75 S.Ct. 294, 99 L.Ed. 716, for his interpretation of Section 70, sub. c. That case involved a chattel mortgage filed ten months after execution and one year prior to the adjudication of bankruptcy. Under New York law, simple creditors who become such in the interim between the execution and belated recording of the mortgage, have priority over the mortgage. There was in fact no existing creditor who had granted credit during the ten-month interim. The Court nevertheless took a broad interpretation of the last clause in Section 70, sub. c and concluded:

"Since an existing creditor without notice of the chattel mortgage, could have obtained a lien at the time of the filing of the petition in bankruptcy, and since under § 70, sub. c of the Bankruptcy Act the Trustee was entitled to be put in the position of an 'ideal' hypothetical creditor, we think his position must prevail over that of the mortgagee-appellant."

Constance v. Harvey has been criticized by law reviewers, see list, 4 Collier, Bankruptcy, Parag. 70.51 [2] p. 1431 n. 30 (14th ed. 1959 supp.), has been rejected by the Sixth Circuit Court of Appeals, In re Alikasovich, 6 Cir., 1960, 275 F.2d 454, certiorari granted sub nom. Lewis v. Manufacturer's Nat. Bank, 80 S. Ct. 1613; by the United States District Court in Western Missouri, In re Billings, D.C.W.D.Mo.1959, 170 F.Supp. 253; and by the United States District Court in Maine, In re Di Pierro, D.C.D.Me.1958, 159 F.Supp. 497, 498, note 2 (dictum), has been followed and distinguished in its own Circuit, In re Gondola Associates, D.C.E.D.N.Y.1955, 132 F.Supp. 205, affirmed sub nom. Conti v. Volper, 2 Cir., 1956, 229 F.2d 317; In re American Textile Printers Co., D.C.D.N.J.1957, 152 F.Supp. 901, has been impliedly approved in the Ninth Circuit, Miller v. Sulmeyer, 9 Cir., 263 F.2d 513, certiorari denied 1959, 361 U.S. 838, 80 S.Ct. 55, 4 L.Ed. 2d 78, and has been criticized in the Fifth Circuit, Blackford v. Commercial Credit Corp., 5 Cir., 263 F.2d 97, 111, note 14, certiorari denied 1959, 361 U.S. 825, 80 S.Ct. 74, 4 L.Ed.2d 69.

The criticism generally levelled at Constance v. Harvey is that it creates a hypothetical creditor with rights assumed to have arisen before the bankruptcy and thus violates the basic concept of Section 70, sub. c that all rights of the trustee accrue on the date of the bankruptcy and not before. See In re Alikasovich, 6 Cir., 1960, 275 F.2d 454, 456. I subscribe to this criticism of Constance v. Harvey, and follow that which is, to me, the better

reasoning and more logical result reached in Alikasovich.

█ The Referee seemed to be of the view that, because certiorari was denied by the Supreme Court in the Constance case, the principle of that decision had, by implication, received the blessing of the Supreme Court and required our following it. This is a common misconception of the significance to be attached to a denial of certiorari. But the law is crystal clear that the denial of a petition for a writ of certiorari carries no affirmation or inference of affirmation of the correctness of the lower court decision. Griffin v. United States, 1949, 336 U.S. 704, 716, 69 S.Ct. 814, 93 L.Ed. 993. The Supreme Court has repeatedly emphasized this point in an attempt to negative an improper assumption to the contrary. State of Maryland v. Baltimore Radio Show, 1950, 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562; Agoston v. Commonwealth of Pennsylvania, 1950, 340 U.S. 844, 71 S.Ct. 9, 95 L.Ed. 619. In this last-cited case, Justice Frankfurter repeated an oft-quoted principle that the denial of a petition for a writ of certiorari " 'imports no expression of an opinion upon the merits of the case' ". See United States v. Brennan, D.C.D.Minn.1955, 134 F.Supp. 42, at page 54.

So we are not bound to follow the Constance holding. Indeed, in view of its faulty logic, impractical reasoning, and unwise result, good sense dictates that we should not follow it.

But even if Constance v. Harvey were good law, that decision is clearly distinguishable from the case here because of the difference in the pertinent controlling State law of New York and Minnesota. To void the mortgages in Constance under New York law, it was necessary to have only a *credit extension* prior to recording. However, to void the contracts under Minnesota law, in this case it was also necessary to have a *lien acquisition* prior to the recording.

The pertinent provisions of the Minnesota Statutes read:

"511.01 *Mortgages, when void*

"Every mortgage of personal property shall be void, as against the creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith, unless it appears that such mortgage was executed in good faith, and not for the purpose of hindering, delaying, or defrauding any creditor of the mortgagor, and unless, in addition thereto, the giving of such mortgage is accompanied by immediate delivery, and followed by actual and continued change of possession of the mortgaged property, or, in lieu thereof, the mortgage is filed as hereinafter provided.

"511.18 *Conditional sales contracts*

"*Subdivision 1. Void as to creditors unless filed.* Every promissory note or contract of sale, conditioned that the title to the property for or on account of which the same was given shall remain in the vendor, shall be void as to creditors of the vendee and subsequent purchasers and mortgagees of such property in good faith, unless the note or contract, or a copy thereof, or if the contract be oral, a memorandum, signed by the purchaser and expressing its terms and conditions, be filed as in the case of a chattel mortgage."

29 Minn.Stat.Ann. §§ 511.01, 511.18 (1) (1947).

█ Under both the chattel mortgage and the conditional sales statutes of Minnesota, the word "creditors" has been construed to mean creditors with a lien upon the property. Goodrich Silvertown Stores of B. F. Goodrich Co. v. A. & A. Credit System, Inc., 1937, 200 Minn. 265, 274 N.W. 172; Neils v. Bohlsen, 1930, 181 Minn. 25, 231 N.W. 248. Thus, absent estoppel or fraud, Goldberg v. Brule Timber Co., 1918, 140 Minn. 335, 168 N. W. 22 (dictum); Clark v. B. B. Richards Lbr. Co., 1897, 68 Minn. 282, 71 N.W. 389, the creditor must have obtained a lien on the property prior to the recording of the mortgage or conditional sales contract in order to prevail. Bradley v. Robie, 8 Cir., 1920, 266 F. 884; Title Guaranty &

336

Surety Co. v. Witmire, 6 Cir., 1912, 195 F. 41, 43; Dunlop v. Mercer, 8 Cir., 1907, 156 F. 545, 549–550; In re Williams, D.C. D.Minn.1932, 60 F.2d 130; Clark v. National Citizens' Bank, 1898, 74 Minn. 58, 76 N.W. 965, 967, 1125.

By making the distinction between New York chattel mortgage law and New York conditional sales law, the opinion in Constance v. Harvey clearly indicates that the time of a lien acquisition, as opposed to that of a credit extension, cannot be related back. Since Minnesota law requires a lien acquisition prior to recording in order to invalidate the contract, the theory of Constance v. Harvey does not control the present case. See, Collier, Bankruptcy, Parag. 70.51 [2], p. 1430 (14th ed., 1959 supp.).

The Order of the Referee denying the reclamation is reversed.